# HERMAN VAN UDEN AND ANOTHER v. TITUS C. KREUZER[1]

May 26, 1950.

No. 35,148.

*P. M. Meehl* and *Hall & Forbes,* for appellant.
*Z. L. Begin,* for respondents.

MAGNEY, JUSTICE.

Plaintiffs brought this action to recover for injuries to a cow owned by them claimed to have been caused by a horse owned by defendant. From a judgment entered against him, defendant appeals.

Defendant was the owner of a large four-year-old spirited saddle horse named Max's Diamond. In the summer of 1948, prior to June 14, the horse was kept in the so-called Sinesal pasture. Two other horses were kept in this pasture, one owned by a Dr. Anderson and the other, a pony owned by one M. C. Stanwood. Dr. Anderson requested defendant to remove Max's Diamond from the pasture, as he, the doctor, was going away and Mr. Stanwood's

---

[1]Reported in 41 N. W. (2d) 814.

daughter, who usually took care of the pony, would also have to take care of the Anderson horse. Because of the behavior of Max's Diamond, he said, the girl was afraid of him and afraid to go into the pasture, that he would chase the other horses and lead them away. Mrs. Anderson also called up defendant and asked him to remove the horse for the same reason. On June 14, which was a Monday, defendant did take his horse out of the Sinesal pasture and placed him in the five-acre pasture of plaintiffs, who consented thereto upon defendant's promise to pay for the use of the pasture and upon defendant's further statement that the arrangement would be temporary only, as he expected to sell the horse in a week or so. Plaintiffs kept a cow, a heifer, and a calf in the pasture. The following Friday, plaintiff Herman Van Uden called up defendant and told him that the horse was chasing his cow and that the cow was lame from it. He said that he was afraid the horse would ruin the cow and asked defendant to remove the horse from the pasture. Defendant replied that he would take him out as soon as he had a sale for him. On Saturday, Herman again called up and told defendant to do something about it, as the horse was chasing the cow. Defendant said that he would put hobbles on him to restrain him. Defendant claims that on Sunday morning he put a hain chain on the horse, having been unable to locate any hobbles. On Sunday evening, Herman again called and asked defendant to come out. He did so. On arrival he found the hain chain off the horse and the cow lying down, with horse tracks all around her. The ground was trampled. The cow had a swelling on the right front over the ribs back of the shoulder. She was helped up with the persuasive aid of an electric prod and could hardly walk. The injuries were serious. Herman told defendant that the horse had been hitting the cow with his front hoofs.

The case was tried to the court. Findings were favorable to plaintiffs. Judgment was entered, and defendant appeals.

Defendant contends that there is no proof that the horse was vicious and that he had no actual or constructive knowledge of such propensity.

In Lee v. Seekins, 208 Minn. 546, 548, 294 N. W. 842, 844, we said:

"The gist of an action of this kind is the neglect of the owner or keeper of the animal, known to be vicious and liable to attack, to restrain it. And notice of viciousness, actual or constructive, must be such to put a prudent man on guard. [Citing cases.] Negligence is presumed where an injury follows the keeping of an animal known to be vicious. [Citing cases.]

"Difficulty arises in determining what evidence of viciousness is sufficient to charge the owner or keeper of the animal with notice of its viciousness."

The rule was reiterated and applied in the recent case of Hagerty v. Radle, 228 Minn. 487, 37 N. W. (2d) 819.

In this case, little difficulty arises in determining whether the evidence of viciousness is sufficient to charge defendant with notice thereof. It is obvious from the facts detailed above that prior to the injuries to the cow defendant had actual knowledge of the vicious disposition of his horse with reference to other domestic animals. He was told two or three days prior to the serious injury to the cow that she was being molested by the horse and that at that time she had already been injured to such an extent that she was lame. He was asked two or three times to remove the horse because of its behavior. He said that he put a hain chain on him to restrain him, but no hain chain was attached to the horse when defendant went out Sunday evening. It is obvious that defendant's horse had caused the injury to the cow. It is also clear that defendant had knowledge prior to the injury inflicted on Sunday that his horse had manifested an ugly and vicious disposition toward plaintiff's cow, that the horse had already injured her, and that he would be likely to do so again. Defendant did nothing effective to restrain the horse from doing damage.

Other questions are raised by defendant. We find nothing in them which can change the result, and no discussion is called for.

Judgment affirmed.

Mr. Justice Theodore Christianson, not having been a member of the court at the time of the argument and submission, took no part in the consideration or decision of this case.